PEOPLE v PROVOST

1. Appeal and Error—Trial—Criminal Law—Juror Misconduct—
   Preserving Question.

   The fact that a defendant's allegation of juror misconduct was
   more thoroughly presented and argued after the jury had
   reached its verdict does not preclude review by the Court of
   Appeals of the alleged error where during the trial the defend-
   ant's attorney sought a recess to investigate the possibility that
   one of the jurors had made comments concerning the trial to
   persons outside the courtroom and the investigation resulted in
   a denial by the juror of misconduct and the defense attorney in
   his motion for a new trial again raised the issue and at further
   hearings two witnesses testified that the juror had made state-
   ments to them about the trial.

2. Appeal and Error—Trial—Criminal Law—Juror Misconduct—
   Showing of Prejudice.

   Some showing must be made that the misconduct of a juror
   affirmatively prejudiced a defendant's right to a trial before an
   impartial and fair jury before the Court of Appeals will order a
   new trial because of misconduct of a juror.

3. Homicide—Charged Offense—Submission to Jury—Evidence—
   Appeal and Error.

   The submission of the charged offense of second-degree murder to
   the jury was not error where there was direct eyewitness
   testimony that a defendant had intentionally pushed his victim
   into the path of an oncoming car.

4. Criminal Law—Witnesses—Identification Testimony—State-
   ment of Judge—Appeal and Error.

   An inadvertent statement made by a trial judge which tied the

---

References for Points in Headnotes
[1] 76 Am Jur 2d, Trial §§ 1010, 1072, 1073, 1075.
[2] 76 Am Jur 2d, Trial §§ 1078, 1080.
[3] 40 Am Jur 2d, Homicide §§ 529, 533.
[4] 81 Am Jur 2d, Witnesses §§ 420, 492.
[5] 81 Am Jur 2d, Witnesses §§ 518–521.
[6] 40 Am Jur 2d, Homicide §§ 525, 526.
[7] 21 Am Jur 2d, Criminal Law §§ 409, 416, 427, 432.

testimony of a witness to a defendant was harmless error where although the witness had been ordered not to give any identification testimony at trial regarding the defendant due to an improper photographic identification procedure, the defendant had never disputed his presence at the time of the decedent's death and the court's remark did no more than confirm the defendant's presence and did not reinforce the witness's version of the incident.

5. CRIMINAL LAW—EVIDENCE—WITNESSES—DRIVING RECORD—IMPEACHMENT—APPEAL AND ERROR.

Refusal by the trial court to allow a defendant to introduce a decedent's driving record, which contained numerous violations, to impeach the testimony of a prosecution witness who testified only that the decedent was always a careful driver when she was with him and not that the defendant had a flawless record was not error; it is not an abuse of discretion for a court to deny impeachment by the use of extrinsic evidence.

6. CRIMINAL LAW—HOMICIDE—SECOND-DEGREE MURDER—MANSLAUGHTER—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES.

A defendant has no right to force an "all or nothing" verdict on the jury; therefore, it was not error for a trial court to instruct the jury, in a trial for second-degree murder, on the lesser included offense of manslaughter over the objections of the defendant.

7. CRIMINAL LAW—SENTENCING—DISQUALIFICATION OF JUDGE—PUBLIC RECORD—APPEAL AND ERROR.

A trial court may consider a wide berth of information in sentencing a convicted defendant; therefore, it was not error for a trial judge to refuse to disqualify himself from sentencing a defendant where the defendant's motion for disqualification was based on the fact that the defendant had testified before the same judge under a grant of immunity in another criminal trial, because the information known to the judge regarding the testimony under immunity was a part of the public record and could have been considered by any judge rendering sentence.

Appeal from Saginaw, Eugene Snow Huff, J. Submitted June 24, 1977, at Lansing. (Docket No. 31027.) Decided August 23, 1977. Leave to appeal applied for.

Robert P. Provost was convicted of voluntary manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Peter C. Jensen,* Assistant Prosecuting Attorney, for the people.

*Robert H. Tiderington,* for defendant.

Before: D. F. Walsh, P. J., and Quinn and H. D. Stair,* JJ.

H. D. Stair, J. Defendant Robert Paul Provost was convicted on June 10, 1976, of voluntary manslaughter. MCLA 750.321; MSA 28.553. He was sentenced to a term of 8 to 15 years in prison.

The offense occurred on September 14, 1975, in the City of Saginaw, Michigan. The incident was precipitated by a disputed confrontation on the highway between the car driven by defendant and the car driven by the decedent, Ricky Emmendorfer. All of the witnesses at trial agreed that decedent, for some unknown reason, suddenly applied his brakes, forcing defendant to swerve into the oncoming traffic lane to avoid crashing into the rear of decedent's car. The testimony diverges at this point in time. Lorna Hall, an occupant in decedent's car, testified for the prosecution that defendant pulled in front of Emmendorfer and began bumping his car into decedent's, eventually forcing both to the side of the road. Defendant and his two passengers testified that after defendant pulled in front decedent began running his car into the rear of Provost's car.

The two cars eventually stopped alongside of the road. Shortly thereafter a fight ensued, involving

---

* Circuit judge, sitting on the Court of Appeals by assignment.

defendant, decedent and one of defendant's passengers. The circumstances of decedent's fatal injuries were highly disputed. Ms. Hall testified that as she was pulling the third man away from Emmendorfer, defendant ran up to decedent and threw him into the path of an oncoming vehicle. Defendant denied pushing decedent into the road, stating that he saw decedent hit by the car, but was unaware of how the incident occurred. Defendant's passengers similarly denied knowledge of how decedent got in the path of the car. Medical testimony at trial established the cause of decedent's death as the impact with the oncoming car.

Defendant raises several issues on appeal, only one of which we will discuss at any length. During defendant's testimony his counsel sought a recess to investigate the possibility that one of the jurors had made comments concerning the trial to persons outside of the courtroom. The juror was questioned in chambers and denied making any comments about the case to anyone unconnected with the matter.

Subsequent to the conviction defendant moved for a new trial. One of the reasons advanced in support of the motion alleged the misconduct of this same juror. Several hearings were held on the motion. Two witnesses testified that the juror, who was a co-employee of theirs at a local grocery store, had mentioned to them that he was a juror in a murder trial. They stated that the juror told them that the people involved in the trial were "a rough bunch of guys", and that one of them had been arrested for some outstanding traffic violations just after he completed his testimony. The trial court denied the motion for new trial, holding that no prejudice or evidence of outside influence on a juror had been shown and that the matter had not been timely raised.

We disagree with the court's finding concerning the timeliness of the motion. At trial the issue was put before the court and investigated. It appears that the court unsuccessfully attempted to produce the co-employees of the juror for questions. The juror himself denied making any outside comments. We do not think that the allegation of misconduct was waived since it was apparently raised at the earliest possible time by defendant. The fact that the issue was more thoroughly presented and argued after the jury had reached its verdict does not preclude our review of the alleged error.

On reviewing the substance of the matter we are in accord with the trial court's holding that even if the evidence is taken most favorably to defendant, the comments made by the juror are not grounds for reversal of conviction. Before this Court will order a new trial because of misconduct of a juror, some showing must be made that the misconduct affirmatively prejudiced the defendant's right to a trial before an impartial and fair jury.

"When the trial court learns of an incident, such as happened in this case, arising during the progress of the trial, fairness to the defendant requires that the trial judge ascertain its prejudicial effect. And whether or not the circumstances establish that a mistrial should be declared rests in the sound discretion of the trial judge. *People v Bigge* (1941), 297 Mich 58 [297 NW 70]. Moreover, a mistrial should not be declared in consequence of any mere irregularity which is not prejudicial to the rights of the defendant. *People v Watson* (1943), 307 Mich 596 [12 NW2d 476].

"In *People v Schram* (1966), 378 Mich 145 [142 NW2d 662], our Supreme Court was confronted with the same problem as in the instant case. The rule adopted in *Schram, supra,* is that not every improper contact with a jury presents grounds for a mistrial and the appellate

court will reverse only when prejudice is affirmatively shown or facts clearly establish the inference that it occurred from what was said or done. See, also, *People v Nick* (1960), 360 Mich 219 [103 NW2d 435]." *People v Qualls,* 9 Mich App 689, 693; 158 NW2d 60 (1968).

In the case of an alleged comment made by a juror outside of the courtroom, such prejudice can be shown if the comment indicates that the juror has reached a conclusion in the case prior to the close of evidence or that the juror has been influenced by improper sources. See *People v Sharp,* 163 Mich 79, 80; 127 NW 758 (1910).

In the case at bar, defendant had ample opportunity but failed to show any appreciable prejudice arising from the alleged misconduct. While the comments, if indeed made, were in violation of the juror's oath not to discuss the case with anyone but his fellow jurors, the substance of the remarks does not indicate any preset conclusion or bias on the part of the juror. The remark that the people involved were a "rough bunch", while seemingly detrimental toward defendant and his passengers, was a reasonable reaction to the tenor of the testimony presented. This Court has not found such a reaction to be reversible error, even when it occurred in the presence of the other jurors. See *People v Markham,* 19 Mich App 616; 173 NW2d 307 (1969).

The alleged comment concerning the arrest of one of defendant's passengers immediately after his testimony was unsupported by any evidence. The arrest, had it in fact occurred, would in itself be prejudicial. *People v Wolcott,* 51 Mich 612; 17 NW 78 (1883). However, defendant never presented any evidence on the record that the witness had been arrested in view of the jury. We will not

find prejudice where no record support is available.

Defendant next asserts that the trial court erred in denying his motion for a directed verdict on the charged offense of second-degree murder. Defendant is incorrect in arguing that all of the evidence pointing toward his guilt was circumstantial. There was direct eyewitness testimony that he intentionally pushed the decedent into the oncoming traffic. It was not error to submit the murder charge to the jury.

Defendant contends that the trial court abused its discretion in denying his motion for mistrial. Due to an improper photographic identification procedure the court ordered all identification testimony of Ms. Hall suppressed at trial. Ms. Hall did not thereafter identify defendant by name or point him out in court, but did describe his actions by referring to his appearance and clothing. This testimony effectively identified defendant since prior testimony had placed him at the scene with a description of his appearance. Defendant did not object to this form of identification testimony, but did object and move for mistrial when the trial court, in ruling on an evidentiary matter, inadvertently referred to defendant's presence at the scene in connection with Ms. Hall's trial testimony.

We agree with the court's denial of the mistrial. The remark was admitted by the court to be an unintentional statement tying Ms. Hall's testimony to defendant. The error was, however, harmless since defendant never disputed his presence at the time of the decedent's death. The court's remark did no more than confirm that presence, it did not reinforce Ms. Hall's version of the incident.

Defendant next alleges that the court committed

error in prohibiting him from using a copy of the decedent's driving record to impeach the testimony of Ms. Hall. She had stated that decedent was always a careful driver when she was with him. The driving record contained numerous violations. We find no error in the court's refusal to allow this impeachment. Ms. Hall never testified that decedent had a flawless record, but only that he was careful when she was in the car. Furthermore, the issue of decedent's driving habits was collateral to the case at bar. As such, it was not an abuse of discretion for the court to deny impeachment by the use of extrinsic evidence. See McCormick, Evidence (2d ed), § 47, p 98.

The trial court was not in error in instructing the jury on the lesser included offense of manslaughter, even over defendant's objection. Defendant has no right to force an "all or nothing" verdict on the jury. *People v Chamblis,* 395 Mich 408, 415; 236 NW2d 473 (1975).

Defendant's final claim concerns his sentencing. Defendant had previously given testimony under a grant of immunity at a trial conducted before the same trial judge as in the case at bar. That testimony contained statements which would have incriminated defendant in the prior crime were it not for the immunity. Defendant moved to have the judge disqualify himself from sentencing defendant here on the basis of his knowledge of the previous testimony. The judge refused to disqualify himself and stated expressly that he would take the testimony into consideration for this sentence. Given the wide berth of information that a trial court in Michigan can consider in sentencing, we find no error in this court's actions. Under *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972), a sentencing court may consider "public records con-

cerning the defendant" and "defendant's admissions to the court". 388 Mich at 608. Since any judge rendering the sentence could have considered the public record of defendant's prior testimony, there was no reason for the trial judge below to disqualify himself or ignore that testimony.

Affirmed.